UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| HARLEYSVILLE MUTUAL INSURANCE COMPANY, | ) ) | |
| Plaintiff and Counter-Defendant | ) | |
| | ) | |
| V. | ) | NO. 2:02-CV-235 |
| | ) | *DISTRICT JUDGE GREER* |
| KINGSPORT PACKAGING COMPANY, | ) | *MAGISTRATE JUDGE INMAN* |
| INC., *ET AL.,* | ) | |
| Defendants and Counter-Plaintiffs | ) | |

O R D E R

The parties have filed pretrial motions which have been referred to the

Magistrate Judge for disposition pursuant to 28 U.S.C. § 635 and the standing order of

this Court. A hearing was held on August 31, 2005.


1.      **Joint Motion to Compel the Production of the State Fire Marshall Office's File of Laura Hodge [Doc. 92]**

This motion, filed jointly by plaintiff and the defendants, recites that the State

Fire Marshall's Office previously has waived any privilege with regard to its files,

officially closing its investigation entirely, and that the Fire Marshall already has

produced a "majority" of the file.

All the foregoing may be true, but the fact remains that this Court cannot order

the State Fire Marshall or the State of Tennessee to produce a file if the Fire Marshall,

Attorney General, or other appropriate official of the State of Tennessee has not been

served with a subpoena or otherwise notified that the intervention of this Court has been requested. To state the obvious, neither the State Fire Marshall nor the State of Tennessee is a party to this action.

The motion is DENIED.

**2.      Plaintiff's Motion in Limine to Exclude Patrick Kennedy as a Witness [Doc. 106]**

It appears that defendants' belated retention of Patrick Kennedy as an expert witness was the result of the refusal of the State Fire Marshall to release to any of these parties its investigative file, notwithstanding defendants' efforts to obtain that file. When the deposition of Mr. Dennis Ledbetter, an Investigator with the State Fire Marshall's office, was finally taken on June 27, 2005, defendants decided that they needed a rebuttal cause-and-origin expert. Defendants recite that plaintiff may take Mr. Kennedy's deposition at its pleasure.

Obviously, the defendants disclosed Mr. Kennedy as an expert witness long after the deadline for so doing. Defendants ask that this belated disclosure be excused because they did not realize they had a need for an expert until Mr. Ledbetter's deposition was taken, and Mr. Ledbetter's deposition occurred late in the game, through the fault of no party in this suit. Therefore, fairness dictates that defendants be allowed to use Mr. Kennedy as a witness. *But, there is a qualification:*

Plaintiff long ago designated its expert witnesses, and defendants knew of those

2

witnesses. Nevertheless, defendants did not deem it necessary to hire their own expert, choosing rather to rely on the perceived weaknesses in plaintiff's experts' opinions. It was not until Mr. Ledbetter's deposition was obtained that the defendants decided they needed an expert. However, Mr. Kennedy goes further than to merely rebut or attack the opinions of Mr. Ledbetter; he expresses opinions regarding plaintiff's other expert witnesses who were long ago disclosed. As already noted, the only explanation defendants have for the belated retention of Mr. Kennedy as their expert is the late discovery of Mr. Ledbetter's opinion; absent Mr. Ledbetter's participation in this suit, they would not have – indeed, could not have – any expert witnesses because of their failure to timely disclose same. To seize upon Mr. Ledbetter's participation as an excuse to retain an expert after the deadline for so doing to attack *all* of plaintiff's experts simply is unfair.

Mr. Kennedy will be allowed to testify, but his testimony shall be limited to the opinions and conclusions of Mr. Dennis Ledbetter. Stated another way, Mr. Kennedy should not be allowed to testify – attack, if you will – the opinions of plaintiff's experts who were timely disclosed to the defendants.

Accordingly, the motion to exclude Kennedy as a witness is DENIED and defendants shall make Mr. Kennedy available to plaintiff's attorneys for deposition at such time and place as plaintiff's counsel shall direct.

3

### 3. Plaintiff's Motion in Limine to Exclude Testimony of Future Business [Doc. 107]

Plaintiff asks that the defendants be precluded from introducing any evidence that Kingsport Packaging, Inc., would have received future business orders from Quebecor, insisting that such evidence is speculative.

It is noted that plaintiff states in its supporting brief that it will introduce evidence through a forensic accountant that the defendants had a financial motive to burn the building. More specifically, plaintiff apparently will present evidence that Quebecor, Inc., intended to close its Hawkins County facility and that such closing would have resulted in a sixty percent reduction in Kingsport Packaging's revenues.

Civil arson cases always involve a considerable amount of circumstantial evidence; after all, if there was direct evidence that the insured intentionally burned the insured premises, it is highly unlikely that there would be a lawsuit in the first place. The usual civil arson case will involve some amount of direct evidence, such as the presence of an accelerant or some other evidence that the fire was intentionally set, and evidence of some motive on the part of the insured to burn the building. Together, such facts may constitute circumstantial evidence that it was the insured who burned the building.

Thus, "motive to burn" always is a legitimate issue in a civil arson case. Usually that motive is a financial one, e.g., a mortgage in arrears, overwhelming debt,

a loss of income, a divorce, or a combination of all the above. In the case before this Court, plaintiff seeks to prove, circumstantially, that the defendants had a financial motive to burn the premises because of an anticipated loss of revenue due to the closure of Quebecor's Hawkins County facility. That is legitimate evidence.

If plaintiff introduces evidences that defendants had a motive to set this fire due to the closing of the Quebecor facility in Hawkins County, basic fairness requires that defendants be allowed to present evidence that it would have retained Quebecor's business notwithstanding Quebecor's closing of the Hawkins County facility. Such evidence is no more speculative than plaintiff's suggestion that the closing of the Quebecor facility would have caused a loss of business. Both are speculative to some extent, and vigorous cross-examination will reveal the extent of that speculation. The jury will determine the weight thereof.

The motion *in limine* is DENIED.

### 4. Plaintiff's Motion in Limine to Exclude Evidence of Nonprosecution [Doc. 108]

The plaintiff insurance company requests that this Court order the defendants and their witnesses to refrain from testifying that the defendants have not been charged with the crime of arson.

The defendants essentially agree with the motion *in limine*, except they purport to "reserve the right to revisit this if plaintiff attempts to refer to the existence of a

criminal investigation . . . [and] [i]f the plaintiff or their [sic] witnesses raise the existence of a criminal investigation, defendants should be able to clarify to the jury that no open criminal investigation exists."

Defendants' qualification in their response is simply too broad. If the plaintiff calls a representative of the State Fire Marshall's office (which undeniably will occur), then it could be argued that plaintiff has "referred to the existence of a criminal investigation." Moreover, plaintiff's attorneys should be allowed to ask the jurors on *voir dire* if they appreciate the differing standards of proof in civil trials versus criminal trials; that is especially important in a civil *arson* case inasmuch as the intentional act of burning a building implicates criminal behavior and an unsophisticated juror might conclude that the higher standard of proof applies. By the same token, plaintiff should be allowed to argue at the conclusion of all the proof it is required to prove that the defendants intentionally burned the building only by a preponderance of the evidence, not beyond a reasonable doubt.

Plaintiff's attorneys may ask their questions on *voir dire* about the jurors' understanding about the differing standards of proof, and of course they may argue at the conclusion of the proof that they are bound only to the "preponderance of the evidence" standard. Similarly, merely because representatives of the State Fire Marshall's office or other law enforcement officers are called on plaintiff's behalf necessarily implicates a potential criminal investigation, this implication is not such that

6

any defendant should be allowed to refer to "non-prosecution."

The motion *in limine* is SUSTAINED *unless* the plaintiff suggests in some manner that there was a criminal investigation that did not result in formal charges because of the higher standard of proof required. Questioning the jurors on *voir dire* regarding their understanding of the differing standards of proof, arguing to the jury on closing that the plaintiff is bound only to the preponderance of the evidence standard, and calling necessary witnesses that are associated with law enforcement, should not be construed as a "suggestion" that there was a criminal investigation which would trigger defendants' right to testify regarding "non-prosecution."

This is about as specific as this ruling can be at the pretrial stage, inasmuch as "suggestions" or inferences can arise in a myriad of ways that cannot possibly be anticipated. The parties are aware of the Court's general ruling, and should also be aware that the District Judge will be listening intently to the proof and very well could admit evidence of nonprosecution if any evidence presented by the plaintiff reasonably suggests that the defendants were not prosecuted simply because there was insufficient evidence to satisfy the "beyond a reasonable doubt" standard.

> **5. Plaintiff's Motion in Limine to Exclude Defendants' Exhibits and Witnesses [Doc. 109]**

Plaintiff has moved to exclude various proposed exhibits listed by defendants.

At the outset, the defendants failed to comply with both the letter and spirit of

7

this Court's Scheduling Order. For example, with regard to the video tape, a litigant does not comply with the Scheduling Order by merely referring to a proposed exhibit in a written disclosure and then blithely asserting that the proposed exhibit is no less available to the other party than it is to the party seeking to use it in evidence. It is incumbent on the party seeking to use an exhibit to (1) obtain physical possession of that exhibit, and (2) make it available to the opponent for inspection prior to the final pretrial conference, or (3) explain why it is impossible to do either of the foregoing.

In the same vein, it is wholly unacceptable for a litigant to describe proposed exhibits as "file materials relied upon by witness Jones." First, "file materials" could be measured by the yard or pound, rather than by the page. What, in hundreds upon hundreds of pages of documents, will actually be introduced into evidence? How can the opposing party reasonably be expected to object to a proposed exhibit when there is such a generic reference as this? And just as importantly, how is the *Court* to know?

Defendants seek to justify their generic designation of witnesses – e.g., as "employees of Kingsport Packaging Co." – on the basis that those employees heretofore have been identified and have been known to plaintiff throughout this litigation. That justification is utterly meaningless, for the reasons set forth above.

By agreement, the video tape of the television station may be used by the defendants, but without sound. The exhibit designated "File materials relied upon Burg and Seegebrecht" was withdrawn. The exhibit, "File materials relied upon by

8

Montgomery," was withdrawn. The "File materials relied upon by Ramsayer" was withdrawn. "File materials relied upon by Hoffman" was "refined" by agreement, after which there was no objection. The exhibit, "File materials relied upon by Shirley Price," was, again, "refined," and the parties have reached an accommodation with regard thereto. The exhibit, "File materials relied upon by Richardson," was withdrawn. The exhibit, "File materials relied upon by Moody," was again refined and with this refinement, the objection was withdrawn. The exhibit, "File materials relied upon by Roy Collins," was refined and agreed to by the parties.

The exhibit, "File materials relied upon by Kennedy," shall be limited to Kennedy's file materials which address the opinions of Mr. Ledbetter of the State Fire Marshall's office.

Plaintiff listed thirteen witnesses in its motion which it sought to have excluded. At oral argument, defendants' counsel withdrew eleven of those thirteen witnesses, leaving a dispute only as to Troy Davis and Randy Orchard.

Troy Davis was not designated as a witness until August 8, 2005; defendants had no explanation or justification for his disclosure at such a late date. He shall not be allowed to testify.

As for the proposed witness, Randy Orchard, he was initially identified on November 24, 2003. However, nothing but Mr. Orchard's name was disclosed. Only at today's hearing was his general location and description disclosed. Rule 26(a)(1)

9

requires more.  Mr. Orchard shall not testify.

6.    **Defendants' Motion in Limine Regarding Accelerant Detecting Canine [Doc. 110]**

Defendants ask that this Court preclude any evidence concerning the detection of accelerants based solely on the alert or signal of a dog.

Rather obviously, this motion must be SUSTAINED.  However, plaintiff's response indicates that of the three "alerts" made by the dog, two were confirmed by subsequent laboratory testing.  In reality, the actual evidence will be the results of the laboratory analysis, not the alert of the dog.  All the dog did was to point out to its handler the area from which a sample should be collected.

This motion *in limine* is related to another motion *in limine* filed by the defendants to exclude plaintiff's fire-related experts [Doc. 113], which will be addressed in due course.

7.    **Defendants' Motion in Limine Concerning Prior Fires [Doc. 111]**

Defendants assert that the defendants Brenda Link and her husband, Terry Link, previously recovered under an insurance policy for a fire loss to their residence; and that Mr. Terry Link's business, P.M.T., Inc., was totally destroyed by a previous fire for which there was an insurance payment.  Asserting that evidence of these prior fires is irrelevant and prejudicial, defendants ask that such evidence be excluded.

10

Defendants further rely on *Hodge v. Allstate Insurance Co.*, 1988 U.S. App. Lexis 6241 (6th Cir. 1988), an unreported case which had its genesis in the Eastern District of Tennessee. In *Hodge*, the Magistrate Judge excluded evidence of prior fires, and the Sixth Circuit Court of Appeals affirmed, holding that "[i]n the absence of any proffer by Allstate of evidence that the prior fires were at least unexplained or suspicious, those fires were not logically relevant to any issue in the case."

Plaintiff seeks to introduce this evidence to show that the defendants, and more specifically, Mrs. Link, were "insurance-wise": "Plaintiff will argue to the jury that the Links learned from their second fire that a loss payee is generally given more favorable treatment than the named insured and hence, in the third fire, the case at hand, Brenda Link was listed as a loss payee on the policy." Plaintiff's response, p. 3. Plaintiff relies on another unreported opinion from the Sixth Circuit which also was tried in this district, *Mathis v. Allstate Insurance Co.,* 1992 WL 70192 (6th Cir. 1992). In *Mathis*, the Sixth Circuit held that fire insurance claims are "other acts" as contemplated by F.R.E. 404(b) and that whether or not to admit evidence of prior fires is largely within the discretion of the trial judge. *Id.*, at **5.

The *Mathis* case relied upon by the plaintiff is not on point. In *Mathis*, the insureds failed to disclose on their application for insurance that they had prior fire losses; rather obviously, evidence of those prior fire losses would have been admissible to demonstrate that the insureds lied on their applications.

11

In the case before this Court, the evidence ostensibly is offered to prove a string of relatively complex transactions regarding transfers of property and the significance of being designated a "loss payee." The prior *business fire* does have relevane in that regard, and evidence thereof may be admitted with this caveat: plaintiff's counsel shall not so dwell upon the prior fire loss that it becomes obvious that plaintiff is arguing that "since you had one prior fire loss, more likely than not this fire loss was intentional." Nor shall plaintiff suggest that the prior fire loss was suspicious in origin. First, that is not the basis upon which plaintiff seeks to justify the introduction of this evidence. Second, if that suggestion is made during the proof, an entirely new arena of proof is opened, *viz.*, whether the prior fire was, or was not, suspicious in origin. For evidence to come in regarding the suspicious nature of the prior fires, a mistrial will almost be a certainty inasmuch as there will be no witnesses who can knowledgeably address that issue.

The Court cannot perceive of any relevance at all with respect to the defendants' prior fire loss to the residence dwelling, at least not on the basis upon which plaintiff seeks to have this evidence admitted in the first place, *viz.*, "insurance-wise."

Accordingly, defendants' motion *in limine* is DENIED with respect to evidence of the prior business fire loss, but GRANTED as to the prior residence fire loss.

12

8.     **Defendants' Motion in Limine to Exclude Plaintiff's Fire Related Experts [Doc. 113]**

Relying on *Daubert v. Merrell Dowel Pharmaceuticals*, 509 U.S. 579 (1993), defendants seek to exclude the testimony of plaintiff's proposed expert witnesses on the bases that their anticipated testimonies are not based upon sufficient facts or data, and neither are their testimonies the product of reliable principles and methods, as required by F.R.E. 702.

This motion comes too late. Reference is made to this Court's order regarding plaintiff's Motion to Strike Defendants' *Daubert* Motion *in Limine* [Doc. 127]. But to address defendants' *Daubert* motion on the merits out of an abundance of caution, it appears that a litigant once again strives to stand *Daubert* on its head. The thrust of *Daubert* and its progeny was to liberalize the admission of expert testimony: "Vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. "A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a 'sea change over federal evidence law' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Advisory Comm. Note* to 2000 amendments to Rule 702.

Defendants effectively ask a judge of this Court to *weigh* the evidence to be presented by these experts and then determine that the experts' opinions are not based

13

on reliable principles and methodology. It is, to be sure, a matter of degree, but after hearing the defendants' argument, the Court believes that plaintiff has crossed that threshold. There is fodder aplenty for cross-examination, but it is the prerogative of the jury to weigh the evidence and determine its effect.

There remains an additional troubling matter. Samples of fire debris collected by the Fire Marshall's office, and which, after laboratory analysis, revealed the presence of accelerants, have been lost by the Fire Marshall's office. The plaintiff had absolutely nothing to do with the care and custody of those samples, and obviously had nothing to do with their subsequent loss. Before their loss, the samples were tested and showed the presence of accelerants. Defendants very much would like to have tested those samples, but obviously that cannot be done since the samples no longer exist. However, defendants can rather effectively cross-examine plaintiff's experts even without these samples, whereas to deny plaintiff any proof at all based on these samples, when it had no fault in the loss of the samples, would be terribly unfair.

Defendants' motion is DENIED.


9.    **Plaintiff's Motion to Strike Defendants' Daubert Motions in Limine [Doc. 127]**

The Scheduling Order entered in this case on May 21, 2003 [Doc. 15] required that any party having an objection "to any expert witness's qualifications to testify as an expert shall be made by September 29, 2003." The Court extended that deadline to

14

December 15, 2003, and that deadline was never again extended.

Defendants' filed their *Daubert* motion on August 17, 2005, which is less than thirty days before the trial date. Moreover, the *Daubert* hearing could be held, at the earliest, on August 31, 2005, precious little time to conduct a *Daubert* hearing, especially if the issues are complex and extensive.

Defendants argue that they merely complied with relatively recent orders of this Court that set a deadline for the filing of motions *in limine*. In other words, defendants argue that this *Daubert* motion is nothing more than a motion *in limine* and therefore was timely filed.

Even a modicum of lawyerly precaution would require that a *Daubert* motion be filed by the deadline in the Scheduling Order that specifically addresses *Daubert* motions, rather than relying upon the deadline set for motions *in limine* in general. It was because many lawyers sought to jump through this perceived "loop-hole" in the Court's scheduling orders, as defendants seek to do herein, that more recent scheduling orders have been amended to close the hole.

In all candor, the Court should deny defendants' *Daubert* motion as untimely filed, but the Court declines to do so.

The motion to strike the *Daubert* motion is DENIED.


**10.    Miscellaneous**

At the conclusion of the motion hearing, both parties undertook to list exhibits that neither had shown to the other as required by Rule 26 and the Scheduling Order of this Court. In other words, the motion hearing was the first time that either side saw these various exhibits. Enough is enough. Those photographs designated by defendants as proposed Exhibit 66 cannot be used. A "diagram" prepared by Mr. Link, denominated a "demonstrative" exhibit, may not be used. It is far more than merely demonstrative; it is extremely detailed and skillfully prepared.

In the same vein, plaintiff's proposed Exhibit 48, consisting of four photographs made by Detective Jeff Greer, cannot be admitted into evidence.

Although not belatedly disclosed, plaintiff's proposed Exhibits 92 and 107, being summaries of an investigation, contain multiple levels of hearsay and may not be introduced as exhibits. The individuals who prepared those summaries may use them to refresh their memories while testifying, but not further.

**11.      Defendants' Objection to Preliminary Witness List of Plaintiff [Doc. 114]**

The Court will address only those witnesses to whom there were objections.

| | |
|---|---|
| *Dennis Akin* | Objection overruled. |
| *Bryan Durig* | Objection withdrawn |
| *Thomas Eaton* | Objection overruled |
| *Roy Smith* | Objection overruled |

16

| | |
|---|---|
| *Johnny Hayes* | Objection overruled |
| *Dennis Ledbetter* | Objection overruled |
| *Von Liggett* | Objection overruled |
| *Johnny Robertson* | Objection overruled |
| *Russell Robinson* | Objection overruled |
| *George Rogers* | Objection overruled |
| *Robert Watson* | Objection overruled |
| *Gary Williamson* | Objection overruled |
| *William Manis* | Objection overruled |
| *Laura Hodge* | Objection overruled |

*ADT Security Personnel:* It was announced that these witnesses will testify that the motion detector in the premises is and was activated by heat.  There is no objection to this line of testimony.

**12.  Defendants' Objections to Preliminary Exhibit List of Plaintiff [Doc. 115]**

The Court will address the objection by numbered paragraph as set forth in

defendants' objections:

**1** – exhibit withdrawn

**2, 3, 4, 5, 6 & 7** – these will be limited to impeachment and there is no objection to their use for that purpose.

**8, 9, 10, 11, 12** – the objections are overruled in light of the Court's ruling on defendant's *Daubert* motion.

17

**13, 14** – objections withdrawn

**15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26** – these objections are governed by the Court's ruling on defendant's *Daubert* motion and, in light of that ruling, the objections are denied.

**27** - the exhibit was withdrawn.

**28** – the exhibit was withdrawn.

**29** – this objection is controlled by the Court's ruling on defendant's *Daubert* motion and, in light of that ruling, the objection is denied.

**30** – the exhibit was withdrawn.

**31** – in general, the objection to this exhibit is denied in light of the Court's ruling regarding the defendants' motion *in limine* concerning prior fire losses. However, plaintiff's counsel are advised that they may not willy-dilly introduce documents from that file since it surely contains a grotesque amount of hearsay and other irrelevant information.

**32** – the objection to this exhibit was withdrawn.

**33, 34** – these exhibits were withdrawn.


SO ORDERED:

　　　　　　　　　　　　 s/　 Dennis H. Inman　　　　　　
　　　　　　　　　　　　United States Magistrate Judge